

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2007

# Lula v. Network Appliance

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3025

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Lula v. Network Appliance" (2007). *2007 Decisions.* Paper 563.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/563

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3025

———————

MARY LOUISE LULA,

Appellant.

v.

NETWORK APPLIANCE, INC.

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 03-cv-01066)
District Judge: Hon. David S. Cercone

———————

Submitted under Third Circuit LAR 34.1(a)
on May 16, 2007

Before: FISHER, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed:  August 21, 2007)

———————

O P I N I O N

———————

**ROTH**, <u>Circuit Judge</u>:

Mary Louise Lula brought an action against Network Appliance, Inc. (NetApp), claiming discriminatory employment termination and discriminatory hiring. The District Court granted summary judgment in NetApp's favor. This appeal presents three issues of law: (1) whether Lula established a prima facie case of discriminatory employment termination, (2) whether Lula established a prima facie case of discriminatory hiring, and (3) whether the District Court correctly applied the burden-shifting requirement under *McDonnell Douglas*, 411 U.S. 792 (1973). We conclude that Lula has not established a prima case for either of her discrimination claims. We will, therefore, affirm the judgment of the District Court.

## I.  **Factual History**[1]

In August 1998, NetApp hired Lula as a sales representative based in Pittsburgh, Pennsylvania. NetApp had no physical office in Pittsburgh. Lula worked out of her home, as did NetApp's only other employee in Pittsburgh, John Hurka, a systems engineer. From August 1998 to May 2001, Lula was part of NetApp's New England District. She made sales in Pennsylvania, West Virginia, and upstate New York. In May 2001, NetApp reassigned Lula to its Ohio District (part of NetApp's Central Area), based in Cleveland, under the supervision of David Sheperd, the Ohio District manager. Sheperd reported to the Vice President of the Central Area, George Bennett. As part of her re-assignment, NetApp

---

[1] The facts are taken from the District Court's Memorandum Opinion of May 17, 2006.

2

removed New York from Lula's sales territory.

Around July 2001, NetApp decided to reduce its workforce because of declining sales and poor business forecast. When NetApp instructed Bennett to develop a plan to reduce Central Area's workforce by 10 percent, he decided to eliminate the two positions in Pittsburgh. He believed that it made better business sense to cut two jobs from one city rather than cutting one job from two different cities and weakening them both. Bennett, without input from his district managers, identified the positions to be eliminated, and NetApp approved Bennett's plan.

On August 14, 2001, NetApp's CEO announced to employees that NetApp was re-sizing to reduce expenses. Later that day, NetApp's President informed employees that the workforce was going to be reduced. The next day, August 15, Sheperd met with Lula and Hurka to tell them that their positions had been eliminated as part of the company-wide workforce reduction. He gave Lula a letter regarding her lay-off and a document titled, "Question & Answers," which stated that terminated employees were free to submit a resumé if they saw a position for which they felt qualified.

Around this time, NetApp was looking to hire a sales representative in Cleveland to replace one who had recently resigned. Lula did not submit a resumé for this position.

## II. Procedural History

Lula filed a complaint against NetApp on July 14, 2003, for discriminatory termination of her employment and discriminatory hiring. In it, she alleged violation of her rights under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment

Opportunity Act of 1972, and the Civil Rights Act of 1991, 42 U.S.C. § 2000e-1, *et seq.*; the Age Discrimination in Employment Act ('ADEA'), 29 U.S.C. § 621, *et seq.*; and the Pennsylvania Human Relations Act ('PHRA'), 43 PA. STAT. § 951, *et seq.* After discovery, NetApp filed a motion for summary judgment and a statement of undisputed facts in support of its motion. Lula filed a response to the statement of undisputed facts, but did not file a separate brief in opposition to NetApp's motion for summary judgment as required. On May 17, 2006, the District Court granted NetApp's motion for summary judgment. Subsequently, Lula filed a timely appeal to this Court.

## III. <u>Jurisdiction and Standard of Review</u>

The District Court had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and 1343. It had supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. § 1367(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

On an appeal of the District Court's grant of summary judgment, we exercise plenary review. *Nathanson v. Med. College of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991). Thus, we will affirm the District Court's order if the evidence, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 841 (3d Cir. 1992). The moving party may demonstrate that there is no genuine issue of fact by showing that the non-moving party has failed to establish one or more essential elements of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d

4

Cir. 2005).  Once the moving party has carried its burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## IV.  Analysis

### A.  Discriminatory Employment Termination[2]

To demonstrate age discrimination under the ADEA when there is no direct evidence of discrimination, a plaintiff must first present circumstantial evidence to establish a prima facie case as outlined in *McDonnell Douglas Corp.*, 411 U.S. at 802.  The plaintiff must show by a preponderance of evidence that (1) she was a member of the protected class, (2) she was qualified for the position in question, (3) she suffered from an adverse employment decision, and (4) she was replaced by someone sufficiently younger to create an inference of age discrimination. *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999).  In a reduction of workforce context, the last element of the prima facie case has been slightly modified to require that the plaintiff show that the employer retained someone similarly situated who was sufficiently younger to create an inference of age discrimination.[3]

---

[2] We will analyze all of Lula's claims under the framework of the ADEA because her claims under Title VII and PHRA apply the same analysis.  *See, e.g., Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

[3] Although Lula also alleges that the issue of whether workforce reduction occurred in the Ohio District is a genuine issue of material fact, Lula does not dispute that NetApp's workforce reduction was company-wide.  Thus, the issue of whether or not a workforce reduction occurred in the Ohio District is immaterial.

5

*Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2002). Once the plaintiff is able to establish all the elements of a prima facie case, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment decision. *Goosby v. Johnson & Johnson Med. Inc.*, 228 F.3d 313, 319 (3d Cir. 2000).

In light of the legal standards set forth above, Lula alleges that the District Court erred in its application of the fourth prima facie element – that the employer retained someone similarly situated. Citing to *Marzano v. Computer Science Corp.*, 91 F.3d 497, 511 (3d Cir. 1996), Lula seems to contend that because of the uniqueness of her situation, she could not and should not have been required to provide evidence of someone similarly situated.

However, Lula's reading of *Marzano* is incorrect. *Marzano* stands for the proposition that when an employee has established a prima facie case, an employer may challenge it by showing that the employee is not similar to these individuals because of some unique characteristic. The plaintiff must first, however, have shown that the employer retained someone similarly situated. A careful review of the record shows that, even after discovery, Lula has not demonstrated that someone similarly situated was retained while she was fired. Therefore, as she failed to establish this element of the prima facie case for demonstrating discrimination in a workforce reduction context, the District Court properly granted summary judgment against her.

## B. Discriminatory Hiring

Similar to a claim of discriminatory termination, in her claim of discriminatory hiring Lula must establish a prima facie case that NetApp's failure to hire her for the position in

6

Ohio was discriminatory. Here, Lula alleges that NetApp was looking to hire a sales representative for its Cleveland office to replace one who had recently resigned and that NetApp's failure to hire her was discriminatory. However, the District Court found that Lula could not establish that she suffered an adverse employment action (i.e. denial of that position) because she did not properly apply for this position as instructed by NetApp.

Although the failure to formally apply for a job will not bar a plaintiff from establish a prima facie case for discriminatory hiring, the plaintiff must show that she made every reasonable effort to convey her interest in the job to her employer, *EEOC. v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990), was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile. *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408 (3d Cir. 1990). We conclude that Lula did not meet the requirements to overcome her failure to formally apply for the sales representative position.

Lula contends, however, that there was a genuine issue of material fact regarding her efforts to convey her interest for the open position. She alleges that she asked district manager Sheperd to consider her for the position and that she applied for the position by asking two of NetApp's vice presidents to consider her for the position. Even if we were to resolve these facts in her favor and assume, *arguendo*, that she did ask Sheperd and the vice presidents to consider her for the position, we find that her efforts do not rise to the every reasonable effort standard set forth in *Metal Serv. Co*. In that case, we found that two men,

7

seeking employment and whom an employer contended did not formally apply directly to the employer, met the requirements of conveying their interest because, among other things, the men had periodically checked on applications they had submitted to a third-party service that the employer utilized for hiring purposes and even tried to formally apply directly with the employer several times. *Metal Serv. Co.*, 892 F.2d at 349. Here, the record is clear that Lula did not make any effort to formally apply for the sales position even though NetApp instructed her to submit a resumé if she saw a position for which she felt qualified. Moreover, she did not follow up on her inquiries to the vice presidents after they said that they would get back to her, despite their failure to respond. Nothing in the record suggests that Lula was dissuaded from formally applying because of any discriminatory practice or that she believed her application to be futile. Therefore, we conclude that Lula has not established a prima facie case of discriminatory hiring.

Because we have concluded above that Lula fails to establish a prima facie case for either of her discrimination claims, we need not address the issue of whether the District Court erred in its application of the *McDonnell Douglas* burden-shifting analysis.

## V. <u>Conclusion</u>

For the reasons set forth above, we will affirm the District Court's grant of summary judgment for NetApp.

8