**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1673
_____

MICHAEL MCCARTHY; ROBERT EDDIS; THE RANK AND FILE MEMBERS OF
IAM DISTRICT LODGE 19

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS; MICHAEL PERRY, President of IAM District Lodge 19

Michael McCarthy; Robert Eddis,
Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-05727)
District Judge:  Hon. Berle M. Schiller

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 6, 2021

_____

Before:  SHWARTZ, PORTER, and FISHER, Circuit Judges.

(Filed: December 6, 2021)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Michael McCarthy, Robert Eddis, and other members of District Lodge 19 initiated this action pursuant to the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 et seq., against the International Association of Machinists and Aerospace Workers ("IAM") and Michael Perry, the President of District Lodge 19. McCarthy contends that he was removed from his IAM position for improper reasons, but Defendants counter that he was removed for incompetent job performance. Because (1) Plaintiffs' LMRDA voting rights were not violated by McCarthy's removal; and (2) McCarthy failed to demonstrate that his alleged protected speech caused the adverse action, we will affirm.

I

A

IAM is an international labor organization. It includes hundreds of local lodges and thirty-five intermediate-level district lodges, including District Lodge 19. District Lodge 19 has nationwide responsibility for employees in the rail industry, and it is governed by thirteen General Chairmen and one President.

In 2012, McCarthy was appointed as a General Chairman of District Lodge 19. In 2015, he was elected to a full, four-year term as a General Chairman. In 2016, McCarthy declined to sign a no-confidence letter seeking the removal of the then-District Lodge 19 President from office but later changed his mind and agreed to sign the petition.

Perry became the President of District Lodge 19 in 2019, and McCarthy was

2

reelected as a General Chairman.  As President, Perry received several complaints about McCarthy's representation of District Lodge 19 members.  Perry investigated the allegations and thereafter informed McCarthy that he could either resign or face formal disciplinary charges.   After McCarthy declined to resign, Perry removed McCarthy from his assignments and, pursuant to Article L of the IAM Constitution,[1] initiated five charges against McCarthy related to alleged instances of incompetence, negligence, and insubordination.[2]  Thereafter, IAM President Robert Martinez referred these charges to a Special Trial Committee, which was composed of three IAM representatives from other district and local lodges.  The Special Trial Committee conducted a preliminary investigation and determined there was sufficient substance to the charges to warrant a

[1] IAM's governing document is its Constitution.  Article L of the IAM Constitution governs allegations of misconduct by IAM officers, representatives, and members, and it includes certain "due process guarantees and safeguards[.]"  J.A. 233.  It provides, in relevant part, that (1) officers may be removed from office; (2) allegations of misconduct must be made in writing to the IAM President, who may refer the matter to a Special Trial Committee; (3) the Special Trial Committee may recommend that the charges be dismissed or a trial be held; (4) if a trial is held, both sides have the right to present evidence and arguments; (5) the Special Trial committee reports its verdict and recommended penalty to the IAM President, who may affirm, modify, or reverse the verdict; (6) the IAM President's decision may be appealed to the IAM Executive Council; and (7) the decision of the Executive Council may be appealed to the Grand Lodge Convention.

[2] These charges alleged, among other things, that McCarthy:  (1) acted incompetently when representing Amtrak members of the Wilmington, Delaware Shops, by failing to appear and represent twenty-five members when they were pressured to recant certain statements, failing to investigate the nature of the dispute with Amtrak, and visiting the Wilmington shop after he was removed from the Wilmington assignment; (2) failed to properly process two grievances sent to him by a local lodge; and (3) provided poor representation to the Kansas and Oklahoma Railroad, most notably by signing a collective bargaining agreement that did not provide for premium pay for overtime.

formal trial. The Special Trial Committee then conducted a trial at which Perry and McCarthy testified, introduced evidence, and called and cross-examined witnesses.

The Special Trial Committee found McCarthy guilty of four of the five charges and recommended that he be removed from his office as a General Chairman and banned from holding any IAM office for five years. Martinez agreed, removed McCarthy as a General Chairman, and implemented the five-year office-holding ban, thereby preventing him from running in the 2023 union elections. The IAM Executive Council affirmed Martinez's decision. McCarthy's appeal to the Convention of the IAM Grand Lodge remains pending.

B

Meanwhile, Plaintiffs initiated this action. In their Amended Complaint, Plaintiffs allege that Defendants violated Plaintiffs' equal right to vote in union elections and McCarthy's right to free speech as guaranteed by the LMRDA, 29 U.S.C. § 411(a).[3] The District Court granted summary judgment for Defendants. McCarthy v. Int'l Ass'n of Machinists & Aerospace Workers, No. 19-CV-5727, 2021 WL 859400, at *9 (E.D. Pa. Mar. 8, 2021). The Court explained that Plaintiffs' claims failed because, among other things, (1) Plaintiffs' right to vote was not violated since the 2019 election was issue-free

---

[3] Plaintiffs abandoned their claims under the Labor Management Relations Act, specifically 29 U.S.C. § 462, regarding trusteeships, and under the IAM Constitution by omitting any reference to them in their opposition to Defendants' motion for summary judgment. See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Carroll v. Lancaster Cnty., 301 F. Supp. 3d 486, 511-12 (E.D. Pa. 2018) (same).

and McCarthy was reasonably removed from office; and (2) McCarthy's right to free speech was not violated since he failed to demonstrate that the charges against him in 2019 were caused by his initial refusal to sign the no-confidence letter in 2016.  Id. at *4-8.

Plaintiffs appeal.  **J.A. 1.**

II[4]

The LMRDA's "primary objective" is to ensure "that unions [are] democratically governed and responsive to the will of their memberships."  Finnegan v. Leu, 456 U.S. 431, 436 (1982).  Title I of the LMRDA includes a "bill of rights" that "was designed to guarantee every union member equal voting rights, rights of free speech and assembly, and a right to sue."  United Steelworkers of Am., AFL-CIO-CLC v. Sadlowski, 457 U.S. 102, 109 (1982).  The LMRDA provides "a cause of action to any person whose" Title I rights have been violated.  Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of a district court's order granting summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant is entitled to judgment as a matter of law when the non-movant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When conducting this analysis, we "view the facts in the light most favorable to the non-[movant] and must make all reasonable inferences in that party's favor."  Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Am., 927 F.2d 1283, 1298 (3d Cir. 1991); see also 29 U.S.C. § 412.

Plaintiffs contend that Defendants' actions violated Plaintiffs' LMRDA equal voting and free speech rights. We disagree.

A

Under the LMRDA, every member of a labor organization must have "equal rights . . . to vote in elections." 29 U.S.C. § 411(a)(1). To this end, § 411(a)(1) provides "a command that members and classes of members shall not be discriminated against in their right to nominate and vote." Calhoon v. Harvey, 379 U.S. 134, 139 (1964). Here, McCarthy does not contend that the 2019 elections were somehow unfair or fraudulent. Rather, he asserts that his removal from an elected position violated the § 411(a)(1) rights of the District Lodge 19 members, such as Eddis, who voted for McCarthy. As the Supreme Court has explained in the context of a free speech claim, "when an elected official . . . is removed from his post, the union members are denied the representative of their choice." Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 355 (1989).

A union member's right to vote, however, is "subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). As relevant, Article L of the IAM Constitution provides that an officer may be removed from office or disqualified from holding office for up to five years for "[i]ncompetence; negligence or insubordination in the performance of official duties; or failure or refusal to perform duties validly assigned." J.A. 233. McCarthy does not dispute that Article L provides a reasonable framework. In compliance with that framework, the Special Trial

6

Committee recommended that McCarthy be removed from office and banned from holding office due to incompetence and insubordination. Thus, McCarthy's removal did not violate Plaintiffs' equal right to vote. Rather, as contemplated by § 411(a)(1), McCarthy was subject to the same IAM rules and regulations applicable to all IAM officers and was removed for poor performance.

Moreover, Plaintiffs do not contend that the Special Trial Committee trial lacked procedural safeguards. Rather, Plaintiffs contend that the District Court used the wrong standard in evaluating the sufficiency of the evidence to support the Special Trial Committee's verdict. The Court applied the "some evidence" standard, McCarthy, 2021 WL 859400, at *6, which is typically applied to assess claims brought under 29 U.S.C. § 411(a)(5). See Lewis v. Am. Fed'n of State Cnty. & Mun. Emp., AFL-CIO, 407 F.2d 1185, 1195 (3d Cir. 1969) (explaining that implicit in § 411(a)(5)'s guarantee of a "full and fair hearing" is the "requirement that there be some evidence to support the charges made" (citation omitted)). Section 411(a)(5) is not at issue here, however, and there is some authority suggesting that this standard applies only to due process-style claims under § 411(a)(5). See Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1468 (6th Cir. 1992) ("While the 'some evidence' standard applies when reviewing a union's decision for procedural sufficiency, this deferential standard cannot apply to cases concerning the free speech guarantees of the LMRDA if those protections are to mean anything."); Bise v. Int'l Bhd. of Elec. Workers, AFL-CIO Loc. 1969, 618 F.2d 1299, 1304 n.5 (9th Cir. 1979) (explaining that the "some evidence" standard is more properly

7

used when assessing the procedure used by the union but is less proper when the question is whether "discipline is being imposed for an improper purpose").

Even if a higher standard applied, such as the substantial evidence standard used to review administrative agency fact finding, we would conclude the evidence supported the Special Trial Committee's findings. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence[.]" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quotation marks and citations omitted). The record meets this standard. For example, testimony was offered to support each of the alleged acts of misconduct and the fact finders credited that testimony. McCarthy's denials or explanations for his actions do not negate that substantial evidence supported the verdict against him.

In sum, because McCarthy was removed from his position as General Chairman in compliance with Article L, and substantial evidence supported the Special Trial Committee's findings, his removal did not violate Plaintiffs' § 411(a)(1) equal voting rights.

B

McCarthy's free speech claim also fails. The LMRDA provides that every member of a labor organization has the right "to express any views, arguments, or opinions[.]" 29 U.S.C. § 411(a)(2). Thus, the removal of an elected union representative in retaliation for protected speech violates the LMRDA. Lynn, 488 U.S. at 349. A

8

plaintiff claiming retaliation must establish three elements: (1) he engaged in protected expression; (2) he was subjected to an adverse action; and (3) the retaliation was a direct result of the protected expression. Casumpang v. Int'l Longshoremen's & Warehousemen's Union, Loc. 142, 269 F.3d 1042, 1058 (9th Cir. 2001); see also Trail v. Loc. 2850 UAW United Def. Workers of Am., 710 F.3d 541, 546 (4th Cir. 2013) ("To state a retaliation claim [], a plaintiff must allege that the retaliation was in response to her exercise of a right guaranteed by some other provision of the LMRDA.").

McCarthy contends that he engaged in protected speech in 2016 when he initially refused to sign the no-confidence letter and that Defendants retaliated against him in 2019 by bringing the charges that ultimately led to his removal from office. However, McCarthy has failed to show that the alleged retaliation was causally connected to his protected expression.

To show a causal connection, a plaintiff must generally show either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing[.]" Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). McCarthy has made neither showing. First, McCarthy has failed to demonstrate a temporal connection between his 2016 initial refusal to sign the no-confidence letter and his 2019 removal. See Watson v. Rozum, 834 F.3d 417, 423 (3d Cir. 2016) (holding that a two-year delay between the protected activity and the alleged retaliatory conduct "is just too remote to suggest a retaliatory motive"). Second, McCarthy has failed to demonstrate a pattern of

9

antagonism targeting him in the period between 2016 and 2019. To the contrary, McCarthy and Perry ran on the same slate of nominees and were elected together in the 2019 elections.

McCarthy counters that when Perry demanded McCarthy's resignation, Perry said "something to the effect of you were never on my team and now it's official." J.A. 212. Perry denies making that statement, however, and, even if we assume that Perry's 2019 statement was referring back to the 2016 no-confidence letter, McCarthy's self-serving testimony on this front is insufficient, without more, to establish causation. See Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (quotation marks and citation omitted)); see also Johnson v. Washington Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence[.]").[5]

---

[5] McCarthy also emphasizes that shortly after he refused to sign the no-confidence letter in 2016, Brian Orwan, the then-District Lodge 19 Assistant to the President, told McCarthy that "[y]ou need to learn to do what you're told, not what you want." Appellants' Br. 3 (quoting J.A. 207). Orwan denied making this statement and explained that he met with McCarthy in 2016 due to McCarthy's work performance issues. Regardless, Orwan resigned in 2017 and thus had no role in the 2019 decision to charge and terminate McCarthy. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

In sum, McCarthy failed to demonstrate that the alleged 2019 adverse action was caused by his 2016 protected expression.  Thus, his retaliation claim under § 411(a)(2) fails.

III

For the foregoing reasons, we will affirm.

11